IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PATTI A. BLASINGAME,           §
                               §
              Plaintiff,       §
                               §
v.                             §        CIVIL ACTION NO. H-11-4522
                               §
ELI LILLY AND COMPANY,         §
                               §
              Defendant.       §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Patti A. Blasingame, brings this action against defendant, Eli Lilly and Company, for sex discrimination in employment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, the Texas Commission on Human Rights Act ("TCHRA"), as codified in the Texas Labor Code 29, § 21.001, et seq., and the Lilly Ledbetter Fair Pay Act of 2009 ("LLFPA"), 42 U.S.C. § 2000e-5(e)(3)(A).  Pending before the court is Defendant's Motion for Summary Judgment (Docket Entry No. 22).  For the reasons stated below, defendant's motion for summary judgment will be granted and this action will be dismissed.

## I.  Undisputed Facts

Plaintiff was hired by defendant in 1992 as a pharmaceutical sales representative.  In 2001 plaintiff received a promotion when Wesley Sackrule selected her from a list of company-approved

candidates to serve as a District Sales Managers ("DSM") under his supervision.   In October of 2010, following an interim review of her 2010 performance, plaintiff complained about Sackrule's allegedly discriminatory conduct to Sackrule's immediate supervisor, Grady Grant.[1]   Rebecca Savikas in defendant's Human Resources ("HR") Department investigated plaintiff's complaint.[2] In November of 2010 Sackrule was reassigned "to an individual contributor role . . . because Savikas' investigation led [defendant] to conclude that Sackrule was not well suited to manage other employees."[3]   Following Sackrule's reassignment plaintiff reported directly to Grant.[4]   On January 1, 2011, Ashley Diaz-Granados assumed Sackrule's former position.[5]   In March of 2011 plaintiff received a "Low Successful" performance rating for 2010.[6] Diaz-Granados delivered the "Low Successful" performance rating to plaintiff, but Grant rated plaintiff's performance for 2010.[7]

_____

[1]Appendix in Support of Defendant's Motion for Summary Judgment ("Appendix"), attached to Docket Entry No. 22, p. 58 (Plaintiff's Deposition, p. 279).

[2]Defendant's Motion for Summary Judgment, Docket Entry No. 22, p. 11 (citing Appendix at 620-55 (Sackrule Investigation)).

[3]Id.

[4]Appendix at 61 (Plaintiff's Deposition, p. 282) and 217 (Declaration of Grady Grant).

[5]Id. at 5 (Plaintiff's Deposition, p. 26) and 217 (Declaration of Grady Grant).

[6]Id. at 61 (Plaintiff's Deposition, p. 282) and 217-18 (Grant Declaration, pp. 2-3).

[7]Id. at 62 (Plaintiff's Deposition, p. 283).   See also id. at 217 (Grant Declaration, p. 2).

Following receipt of her "Low Successful" rating, plaintiff complained of retaliation to defendant's HR Department.[8]   On August 26, 2011, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Number 460-2011-03748.[9]   Diaz-Granados rated plaintiff's 2011 performance as "Low Successful."[10]   Plaintiff does not disagree with her 2011 performance rating, but believes that she "would not have been low successful had [she] not been through ten years of discrimination, emotional abuse, hostile work environment and all those things."[11]   Plaintiff remains employed by defendant and has a positive work relationship with Diaz-Granados.[12]

## II.   Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The

---

[8]Id. at 68.  See also id. at 619 (Participant Activity Information).

[9]Defendant's Motion for Summary Judgment, Docket Entry No. 22, p. 13.

[10]Appendix at 71-72 (Plaintiff's Deposition, pp. 313, 315).

[11]Id. at 72 (Plaintiff's Deposition, p. 315:20-23).

[12]Id. at 3-5 (Plaintiff's Deposition, pp. 17-18 and 26).

Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S.Ct. at 2553-2554).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554).   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Unsubstantiated assertions are not competent summary judgment evidence.   Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 115 S.Ct. 195 (1994).   The nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.

Id. at 1537.  District courts are under no duty "to sift through the record in search of evidence to support a party's opposition to summary judgment."  Id. (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 113 S.Ct. 98 (1992)).  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  Little, 37 F.3d at 1075.

### III.  Analysis

Plaintiff alleges that defendant discriminated against her on the basis of sex by providing her unequal compensation and promotional opportunities provided to her male peers, and retaliating against her for complaining of sex discrimination by evaluating her 2010 performance as "Low Successful" in violation of both federal law  (Title VII and the LLFPA) and state law (TCHRA). Defendant argues that it is entitled to summary judgment on all of plaintiff's claims either because they are time-barred or because plaintiff is unable to cite evidence capable of establishing that she has been subjected to sex discrimination or retaliation.

### A.  Defendant Is Entitled to Summary Judgment on Plaintiff's Claims for Unequal Compensation and Failure to Promote

Plaintiff alleges in her Original Complaint that

> 11.  . . .despite her exceptional performance she has, on numerous occasions, witnessed male employees that performed the same job she and other females did, had fewer responsibilities, less experience, and lesser performance, paid more than her and her female peers, promoted more rapidly, and praised and recognized much

more frequently, receiving additional bonuses and compensation as a result.

12.   Favored treatment toward males evidences Defendant's discriminatory practices. However, the gap between male and female compensation, benefits, recognition and promotion is further widened by Defendant's long-term discriminatory technique of giving Plaintiff and other females lower performance ratings in annual reviews than comparable or lesser male performers, causing further separation between what females are paid versus males, despite superior performance history that can be objectively measured.

. . .

15.   Plaintiff's being denied promotions and pay while other male employees with equal or lesser performance, tenure, or any other standard of measurement in the workplace, were and are awarded them — caused Plaintiff to be more vocal in her complaints of disparate treatment.

16.   Her complaints led to retaliation. . .

. . .

20.   Plaintiff sought help within Eli Lilly to be treated equally, but her complaints did not draw any investigation, but only further retaliation. In early 2011, as her relationship with Defendant's upper management continued to erode, Plaintiff was eligible for a bonus of tens of thousands of dollars. She had performed at an outstanding level and was clearly qualified to receive it. However, her manager made sure she did not by delivering her a poor review.

21.   The poor review was given solely because Plaintiff had consistently complained about her mistreatment and the mistreatment of other women inside Eli Lilly & Company.[13]

Defendant argues that it is entitled to summary judgment on claims that plaintiff has asserted for unequal compensation and

---

[13]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 3-6 ¶¶ 11-12, 15-16, 20-21.

promotional opportunities or failure to promote because all claims
based on discrete acts that occurred before October 28, 2010, i.e.,
over 300 days before plaintiff filed her administrative charge of
discrimination, are time-barred.  Alternatively, defendant argues
that it is entitled to summary judgment because plaintiff cannot
establish a <u>prima facie</u> case for unequal compensation, unequal
promotion opportunities, or failure to promote.

     1.   <u>Applicable Law</u>

        (a)  Title VII and TCHRA

Title VII makes it "an unlawful employment practice for an
employer . . . to discriminate against any individual with respect
to his compensation, terms, conditions, or privileges of employment
because of such individual's . . . sex."   42 U.S.C. § 2000e-
2(a)(1).  The TCHRA similarly prohibits employers from discriminat-
ing against an employee on the basis of sex.   Tex. Lab. Code
§§ 21.051, 21.055.  Claims brought pursuant to Title VII and the
TCHRA are governed by the same legal and evidentiary standards.
<u>See</u> <u>Reed v. Neopost USA, Inc.</u>, 701 F.3d 434, 439 (5th Cir. 2012)
(citing <u>Mission Consolidated Independent School District v. Garcia</u>,
372 S.W.3d 629, 633-34 (Tex. 2012)).  <u>See also</u> <u>Waffle House, Inc.</u>
<u>v. Williams</u>, 313 S.W.3d 796, 804 (Tex. 2010) (recognizing that
"[o]ne express purpose of the [TCHRA] is to 'provide for the
execution of the policies of Title VII of the Civil Rights Act of
1964 and its subsequent amendments.'").  A claim of employment

discrimination can be proven through direct or circumstantial evidence. Russell v. McKinney Hospital Venture, 235 F.3d 219, 222 (5th Cir. 2000). If there is no direct evidence of discrimination, courts apply the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973). See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007). The McDonnell Douglas framework requires the plaintiff to demonstrate a prima facie case of discrimination; then shifts the burden to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action at issue; and, if the defendant meets its burden of production, shifts the burden back to the plaintiff to cite evidence capable of creating a genuine issue of material fact that the employer's reason is a pretext for discrimination. Id. at 411.

> (b)   Exhaustion of Administrative Remedies, Limitations, and the Lilly Ledbetter Fair Pay Act

A Title VII plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 180 days of learning of the unlawful conduct. 42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2070 (2002); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998). Because Texas has a state agency for civil rights complaints, the Texas Workforce Commission Civil Rights Division, it is a "deferral state" in which Title VII extends the charge filing period for discrimination claims to 300 days. 42 U.S.C. § 2000e-5(e)(1);

-8-

Huckabay, 142 F.3d at 238.  Filing a timely administrative charge "is a precondition to filing suit in district court." Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002), cert. denied, 123 S.Ct. 1287 (2003) (quoting Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996)).  Like Title VII, "a TCHRA action requires an exhaustion of administrative remedies that begins with filing a complaint with the Texas Workforce Commission [C]ivil [R]ights [D]ivision." Waffle House, 313 S.W.3d at 804.  In light of worksharing agreements between the agencies and the desire to avoid duplication of efforts, courts consider the filing of a charge with the EEOC as satisfaction of state administrative exhaustion requirements.  See Burgmann Seals America, Inc. v. Cadenhead, 135 S.W.3d 854, 857 (Tex. App. — Houston [1st Dist.], 2004) ("We hold that providing the name of the TCHR and checking the box for simultaneous filing is the equivalent of filing with the TCHR.").

In 2009 the LLFPA added the following language to Title VII's provision governing time limits for filing administrative charges:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(3)(A). Congress enacted the LLFPA in response to the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162 (2007), which held that a plaintiff's wage discrimination claim was untimely because the administrative charge was filed more than 300 days following the pay-setting decision. Id. at 622. The LLFPA was enacted to extend the accrual period for asserting claims based on discriminatory compensation decisions. The LLFPA ensures that the period during which a plaintiff may file a charge of discrimination renews each time an employee is subjected to a discriminatory wage decision, i.e., by receiving a paycheck that reflects the discriminatory decision. The LLFPA addresses the problem identified by the dissent in Ledbetter, that the 300-day accrual limitation strips a plaintiff of a remedy because a plaintiff is often unaware that discrimination motivated a compensation decision until it is too late. See Almond v. Unified School District No. 501, 665 F.3d 1174, 1182-83 (10th Cir. 2011), cert. denied, 133 S.Ct. 317 (2012) (the dissent in Ledbetter argued that the better rule is "to trigger the accrual of a compensation discrimination claim not only when employers intentionally discriminate in pay-setting decisions, but also when they discriminate in other ways that cause a discriminatory pay disparity"). The LLFPA deems each paycheck issued pursuant to a discriminatory pay structure an independent, actionable employment practice. Id. at 1180. See also Wang v. Prudential Insurance Co. of America, 2010 WL 1640182, *4 (N.D. Tex.

April 2, 2010) ("The Ledbetter Act simply renews a plaintiff's cause of action each time the plaintiff receives a discriminatory paycheck.").

The LLFPA also explicitly provides for "recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to the unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." 42 U.S.C. § 2000e-5(e)(3)(B). The LLFPA does not exempt a plaintiff from pursuing claims based upon discrete acts that do not directly impact compensation. See Tillman v. Southern Wood Preserving of Hattiesburg, Inc., 377 Fed.Appx. 346, 350 n.2 (5th Cir. 2010) (citing Harris v. Auxilium Pharmaceuticals, Inc., 664 F.Supp.2d 711, 745-46 (S.D. Tex. 2009), vacated as to FLSA findings only, 2010 WL 3817150 (S.D. Tex. Sept. 28, 2010)). See also Morgan, 122 S.Ct. at 2072 (identifying "discrete acts" as easily identifiable incidents, such as refusal to hire, termination, failure to promote, and denial of transfer); Moore v. Napolitano, Civil Action No. 07-2666, 2009 WL 4723169 *10 n.6 (E.D. La. Dec. 3, 2009) (stating that the LLFPA did not disturb the Supreme Court's holding in Morgan, 122 S.Ct. at 2072, that a plaintiff may not file an administrative charge with respect to discrete acts, e.g., failure to promote claims, that did not occur within the appropriate limitations period).

-11-

The LLFPA does not act to extend the time for filing claims under the TCHRA.   In <u>Prairie View A & M University v. Chatha</u>, 381 S.W.3d 500, 507-09 (Tex. 2012), the Texas Supreme Court held that the TCHRA does not incorporate the LLFPA's definition of when a discriminatory act occurs because the Texas legislature has not passed an analogous amendment to the TCHRA.

     2.    <u>Application of the Law to the Facts</u>

          (a)   Claims for Failure to Promote and Unequal Compensation Arising from Discrete Acts that Occurred Before October 28, 2010, Are Time-Barred

Discrete acts that occurred outside the 300-day, charge-filing period cannot form the basis of discrimination claims for purposes of Title VII or the TCHRA.   Plaintiff does not dispute defendant's assertion that since she filed her EEOC charge on August 26, 2011, the 300-day period extends back to October 28, 2010.   Plaintiff's claims arising from discrete acts that occurred before that date are time-barred because the LLFPA does not save such claims. <u>Tillman</u>, 377 Fed.Appx. at 350 n.2 (citing <u>Harris</u>, 664 F.Supp.2d at 745-46, for its holding that the LLFPA does not apply to discrete acts); <u>Chatha</u>, 381 S.W.3d at 507-09 (holding that the TCHRA does not incorporate the LLFPA's definition of when a discriminatory act occurs because the Texas legislature has not passed an analogous amendment to the TCHRA).

**(1)   Failure to Promote Claims Are Time-Barred**

Many courts, including others in this district, have concluded that the LLFPA does not affect the statutory period for filing

-12-

discrimination claims arising from discrete acts such as the failure to promote. In <u>Harris</u> the court explained,

> A number of other district courts have distinguished failure to promote claims from compensation claims and found that, even after the enactment of the [LL]FPA, the failure to promote claims are still time-barred if the plaintiff does not file an EEOC complaint within 300 days of the discriminatory action . . . [T]he Court finds that, in the instant case, [plaintiff's] failure to promote claims do not challenge a "compensation decision" as contemplated by the [LL]FPA . . . The Court finds that the 300 day statute of limitations applies to [plaintiff's] failure to promote claims.

664 F.Supp.2d at 745-46. In <u>Tillman</u>, 377 Fed.Appx. at 349-50, the Fifth Circuit cited <u>Harris</u> in support of its conclusion that the LLFPA did not exempt the plaintiff from pursuing claims based on the discrete acts that were at issue in that case, i.e., a reprimand, a pay-raise exclusion, and denials of weekend overtime.

The court, therefore, concludes that any claim that plaintiff has asserted or attempted to assert based on a failure to promote that occurred before October 28, 2010, is time-barred and not saved by the LLFPA because a failure to promote is an act identified by the Supreme Court in <u>Morgan</u>, 122 S.Ct. at 2072, as an easily identifiable, discrete discriminatory act. <u>See Hernandez v. City of Corpus Christi</u>, 820 F.Supp.2d 781, 795 (S.D. Tex. 2011) (300-day statute of limitations applied to plaintiff's failure to promote claims); <u>Tryals v. Altairstrickland, LP</u>, No. H-08-3653, 2010 WL 743917, *7 (S.D. Tex. Feb. 26, 2010) ("The rule set out in <u>Ledbetter</u> and prior cases — that 'current effects alone cannot breathe new life into prior, uncharged discrimination,' <u>Ledbetter</u>,

[127 S.Ct. at 2169] — is still binding law for Title VII disparate treatment cases involving discrete acts other than pay."); <u>Chatha</u>, 381 S.W.3d at 507-09 (TCHRA does not incorporate the LLFPA's definition of when a discriminatory act occurs).

### (2)   Unequal Compensation Claims Are Time-Barred

Recent district court decisions have held that if an employee's compensation during the charge filing period is affected by a discrete discriminatory act that occurred outside the charge filing, the LLFPA applies to the claim, allowing the clock to begin running each time an employee's payment is dispersed. <u>See, e.g.</u>, <u>Vuong v. New York Life Insurance Co.</u>, No. 03-Civ.-1075(TPG), 2009 WL 306391, at *8-*9 (S.D.N.Y. Feb. 6, 2009).  In <u>Vuong</u> an employee brought a Title VII discrimination claim after his employer decided to allocate a lesser percentage of the company's performance-related compensation to him than to the employee's co-Managing Partner.  The employee argued that the LLFPA applied to his claim because each paycheck compensated him less than it would have had the discriminatory decision not occurred.  <u>Id.</u> at *9.  The court agreed with the employee's argument and held that the employee's claim was the type of claim that "is expressly declared to be timely by virtue of the [LLFPA]."  <u>Id.</u>  For the LLFPA to apply to plaintiff's claim for unequal compensation arising from performance evaluations that occurred before October 28, 2010, plaintiff must present evidence capable of establishing that the allegedly

-14-

discriminatory performance evaluations that she received before October 28, 2010, affected the compensation that she received within the 300-day charge filing period.

The only evidence of unequal pay that plaintiff has presented consists of year-end pay stubs for 2008 showing that she received approximately $80,000 less that John Crawford.[14]  Plaintiff has not presented any evidence of unequal promotional opportunities. Although plaintiff has also submitted a chart or "dashboard," which she contends shows that over the decade she was supervised by Sackrule she received lower evaluations than Crawford even in years when her sales performance was better than Crawford's,[15] missing from plaintiff's response to defendant's motion for summary judgment is a citation to any evidence capable of establishing that either the compensation or promotional opportunities she received during the charge filing period — i.e., up to 300 days before she filed her formal charge of discrimination — were, as she alleges, less than the compensation or promotional opportunities received by Crawford or any other male peer.  Also missing is a citation to evidence capable of establishing that plaintiff's receipt of less compensation or promotional opportunities than Crawford or other male peers during the charge filing period was caused by

---

[14]Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 34-1, p. 18 (citing Docket Entry No. 31, Exhibit 5, pp. 1-2).

[15]See Docket Entry No. 31, Exhibit 5, p. 3.

-15-

performance evaluations that predate that period.  Absent such evidence plaintiff is unable to raise a Title VII claim for unequal compensation based on performance evaluations that she received prior to the charge filing period.  Even if plaintiff were able to present such evidence her TCHRA claim for unequal compensation would be time-barred because the TCHRA does not incorporate the LLFPA's definition of when a discriminatory act occurs.  The court concludes, therefore, that any claim that plaintiff is asserting for unequal compensation in 2008 or for unequal compensation arising from performance evaluations that she received outside the charge filing period, i.e., before October 28, 2010, is time-barred.  See Wang, 2010 WL 1640182, at *4 ("[T]]he Ledbetter Act . . . only has significance where a plaintiff alleges a series of discriminatory payments. . . . The Ledbetter Act simply renews a plaintiff's cause of action each time the plaintiff receives a discriminatory paycheck."); Chatha, 381 S.W.3d at 507-09 (holding that the TCHRA does not incorporate the LLFPA's definition of when a discriminatory act occurs because the Texas legislature has not passed an analogous amendment to the TCHRA).

> (b)  Plaintiff Unable to Raise Fact Issue for Trial on
>       Unequal Compensation and Failure to Promote Claims

For the reasons explained in § III.A.2(a), above, the court has concluded that defendant is entitled to summary judgment on plaintiff's Title VII and TCHRA claims for unequal compensation and promotional opportunities, or failure to promote arising from

performance evaluations that she received before the charge filing period because such claims are time-barred. The court also concludes that the defendant is entitled to summary judgment on these claims because plaintiff is unable to present direct or circumstantial evidence capable of raising a genuine issue of material fact on any of them.

### (1)   No Direct Evidence of Gender Discrimination

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." West v. Nabors Drilling USA, Inc., 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 123 S.Ct. 2572 (2003)). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." Portis v. First National Bank of New Albany, Mississippi, 34 F.3d 325, 328 (5th Cir. 1994). See also Rubinstein v. Administrators of Tulane Educational Fund, 218 F.3d 392, 402 (5th Cir. 2000), cert. denied, 121 S.Ct. 1393 (2001) (finding that a dean's testimony that he denied a professor a pay raise because the professor filed a discrimination suit against the university "could be no more direct on the issue of retaliation"), and Fabela v. Socorro Independent School District, 329 F.3d 409, 415 (5th Cir. 2003) (describing direct evidence as "any statement or document which shows on its face that an improper criterion served as the basis — not

-17-

necessarily the sole basis, but *a* basis — for the adverse employment action"). However, if an inference or presumption is required for the evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct. West, 330 F.3d at 384 n.3 (citing Sandstad, 309 F.3d 897). "A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail, just as in any other civil case where a plaintiff meets his burden." Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 40 (5th Cir. 1996) (citing Portis, 34 F.3d at 328 n.6).

> When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor. Direct evidence is evidence which, if believed, proves the fact without inference or presumption.

Brown v. East Mississippi Electric Power Assoc., 989 F.2d 858, 861 (5th Cir. 1993).

Asserting that her immediate supervisor, Wesley Sackrule, made disparaging and discriminatory statements about women, plaintiff argues that Sackrule's statements constitute direct evidence that the disparate treatment and retaliation she suffered were motivated by discriminatory animus for her gender.[16]   As evidence of

---

[16]Plaintiff's Response, Docket Entry No. 30, pp. 9-10 (citing Plaintiff's Original Complaint, Docket Entry No. 1, pp. 4-5). Although plaintiff also points to discrepancies between the amounts of pay that she and a male colleague received in 2008 as direct evidence of sex discrimination, id. at 19-21, discrepancies such as
(continued...)

Sackrule's allegedly discriminatory comments, plaintiff cites
excerpts from her own deposition that she argues shows "trouble
from the start" of her career as a DSM reporting to Sackrule.[17]
Plaintiff testified that during her first year as a DSM reporting
to Sackrule, i.e., at the end of 2001, her sales team finished
fourth or fifth in the nation, but despite this exceptional
performance, Sackrule told her she would not be credited for it
because she had only been in the DSM position since July 1, 2001,
and, therefore, was not responsible for her team's performance.[18]

Plaintiff testified that in 2002 her team finished fourteenth
out of forty-two teams, i.e., in the top third, she served as
"Actos champ," and she was selected by her peers as "Champ" and
"MVP" in recognition of her leadership, ability, and teamwork, but
that instead of rating her "High Successful," Sackrule rated her
"Successful."[19] When plaintiff protested her "Successful" rating,
Sackrule responded, "Well, yeah, your results were good; but look
at these one or two things that weren't."[20] When plaintiff pressed
Sackrule about his decision to rate her "Successful" instead of

---

[16](...continued)
this are not direct but, instead, circumstantial evidence that is
analyzed under the standard established by the Supreme Court in
McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

[17]Plaintiff's Response, Docket Entry No. 34-1, pp. 15-17.

[18]Id. at 16 (citing Plaintiff's Deposition, Docket Entry
No. 30-3, p. 96).

[19]Id. (citing Plaintiff's Deposition, Docket Entry No. 30-3,
pp. 103-05).

[20]Plaintiff's Deposition, Docket Entry No. 30-3, p. 104:23-25.

"High Successful," he explained to her that her rating was relative to that of her peers, and that if she needed more money then her husband should go back to work.[21]

Plaintiff also testified that in 2005, 2007, or 2008 — she could not remember exactly when — Sackrule told a room full of people that she was "having one of her moments."[22]  Plaintiff argues that "[t]his is a common derogatory expression used in reference to women, intended to be humorous, but inappropriate in the workplace, particularly when spoken by a manager to one his reports in front of her peers on numerous occasions."[23]

In addition, plaintiff states in her declaration that

[i]t was common for Sackrule to comment on my family situation and how Sackrule believed it interfered with my ability to do my job.  For most of the time Sackrule managed me, my husband did not work and stayed at home to care for the children.  Sackrule criticized this arrangement frequently.

Other frequent comments were "Unless you sacrifice family for a role as a manager you will never be all that you can be," and "men make better employees."[24]

The Fifth Circuit has explained that workplace remarks may constitute direct evidence of discrimination if they are

1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by

_____

[21]Id. at 105:2-106:2.

[22]Plaintiff's Response, Docket Entry No. 34-1, p. 18 (citing Plaintiff's Deposition, Docket Entry No. 30-3, p. 155).

[23]Id.

[24]Id. (citing Blasingame Declaration, Docket Entry No. 30-1, p. 2).

an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.

Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996). If the comments fail to meet these criteria, e.g., if they are vague and remote in time, the speaker has no authority or influence over the employment decisions, or the remarks are not related to the employment decision at issue, then the remarks are merely stray remarks that are insufficient to establish discrimination. See Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 377 (5th Cir. 2010) ("Jackson has not shown that the comment was proximate in time to the termination or related to the employment decision, and thus the comment cannot qualify as direct evidence."). Although the Fifth Circuit no longer uses the four-prong CSC Logic test when remarks are submitted as evidence of pretext in cases based on indirect, circumstantial evidence, the Fifth Circuit continues to use this four-prong test "when a remark is presented as direct evidence of discrimination apart from the *McDonnell Douglas* framework." Laxton v. Gap, Inc., 333 F.3d 572, 583 n.4 (5th Cir. 2003) (citing Auguster v. Vermilion Parish School Board, 249 F.3d 400, 404-05 (5th Cir. 2001)).

Accepting plaintiff's assertions that the statements Sackrule made in 2001 and 2002 were made in the context of rating her performance, they are not direct evidence of unequal compensation based on gender discrimination because plaintiff has failed to cite any evidence showing that either the compensation or opportunities for promotion that she received during those years was unequal to

the compensation and opportunities for promotion received by her male peers. Plaintiff has failed to differentiate herself from her male peers, and has presented no evidence of any male coworker who was better compensated than she during these years despite having had similar or worse performance.

The only evidence of unequal pay that plaintiff has presented consists of year-end pay stubs for 2008 showing that she received less pay than John Crawford.[25] But the statements that plaintiff attributes to Sackrule do not constitute direct evidence that differences between the compensation that plaintiff and Crawford received in 2008 were attributable to discrimination because the 2001 and 2002 comments that plaintiff cites are remote in time, and the comments that plaintiff says may have been made in 2005, 2007, or 2008 (i.e., when Sackrule told a room full of employees that plaintiff was "having one of her moments") were neither indicative of gender bias nor made in the context of rating plaintiff's performance. Sackrule's allegedly frequent statements that plaintiff would never be all that she could be unless she sacrificed her family for her role as a manager is not direct evidence of discrimination because it is gender neutral and defendant has submitted undisputed evidence that Sackrule made the same comment to at least one of plaintiff's male peers.[26]

---

[25]_Id._ (citing Docket Entry No. 31, Exhibit 5, pp. 1-2).

[26]Appendix at 579 (stating that on June 24, 2010, Clayton McCoy shared concerns regarding Sackrule's leadership style and stated,

(continued...)

The only statement of Sackrule's that could conceivably constitute direct evidence of gender bias is the statement that "men make better employees."[27]   Accepting plaintiff's contention that this statement demonstrates discriminatory animus that caused the discrepancy in pay evidenced by the 2008 pay stubs that plaintiff has attached to her response in opposition to the defendant's motion for summary judgment, defendant is still entitled to summary judgment because any claim based on unequal pay in 2008 is time-barred even if the LLFPA is applied to plaintiff's claims.   The LLFPA only provides for "recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to . . . [those] that occurred out-side the time for filing a charge."   42 U.S.C. § 2000e-5(e)(3)(B). Because plaintiff filed her charge of discrimination in August of 2011, any claim for unequal compensation occurring before August of 2009 would be time-barred regardless of whether the LLFPA applies to her claims.

Moreover, absent an evidentiary connection between Sackrule's comments and his evaluation of plaintiff's job performance, a fact-finder would have to infer or presume that Sackrule's comments

---

[26](...continued)
inter alia, that Sackrule "questions his commitment to the business and believes he does this b/c [he] has a large family (5 kids)").

[27]Plaintiff's Response, Docket Entry No. 34-1, p. 18 (citing Blasingame Declaration, Docket Entry No. 30-1, p. 2).

evidence an animus towards women that manifested itself in his evaluation of plaintiff's performance, and that Sackrule's evaluations of plaintiff's performance caused plaintiff to receive compensation and promotional opportunities that were unequal to those received by her male peers.  Because direct evidence of discrimination is evidence that does not require inferences or presumptions to connect allegedly discriminatory conduct with a plaintiff's protected characteristics, the statements that plaintiff attributes to Sackrule are not direct evidence that Sackrule's annual ratings of her performance were motivated by animus for her gender.  See West, 330 F.3d at 384 n.3 (citing Sandstad, 309 F.3d 897) (recognizing that if an inference or presumption is required for the evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct).

### (2)  No Circumstantial Evidence of Discrimination

Circumstantial evidence is presented using the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).  Under that analysis the plaintiff must present evidence establishing a prima facie case.  Id. at 1824.  If a prima facie case is established, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the action at issue.  Id.  If the defendant meets this burden, the presumption

created by the prima facie case disappears, and the plaintiff must then cite substantial evidence showing that each of the employer's proffered reasons was a pretext for discrimination.  Id. at 1825. See also Reeves, 120 S.Ct. at 2106; Wallace v. Methodist Hospital System, 271 F.3d 212, 220 (5th Cir. 2001), cert. denied, 122 S.Ct. 1961 (2002).  The plaintiff may meet his burden by citing evidence either that the defendant's proffered nondiscriminatory reasons are false or, if true, that his protected characteristic was, nevertheless, the motivating factor for the adverse employment action.  See Reeves, 120 S.Ct. at 2112.

> [T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. . . . The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." . . . In other words, "[i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."

Id. at 2107-08 (quoting St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2756, and 2754 (1993)).

Defendant argues that it is entitled to summary judgment because plaintiff cannot establish a prima facie case for her unequal compensation, unequal promotion opportunities, or failure to promote claims and cannot establish that defendant's legitimate, non-discriminatory reasons for her performance evaluations and failure to be promoted were pretexts for gender discrimination.  To establish a prima facie case of discrimination based on disparate

treatment a plaintiff must show that she is a member of a protected class, is qualified for the job she held or sought, suffered an adverse employment action, and received less favorable treatment than a similarly situated individual outside her protected class. See McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). Defendant does not dispute that plaintiff belongs to a protected class, was qualified for her position as District Sales Manager, and suffered adverse employment actions in the form of unfavorable performance evaluations. Instead, defendant argues that plaintiff is unable to establish the fourth prong of a prima facie case for unequal compensation, unequal promotion opportunities, or failure to promote because plaintiff cannot cite evidence capable of establishing that she was treated less favorably than any male peer in a nearly identical situation who was paid more, promoted, or provided more favorable opportunities for promotion than she.

Plaintiff disputes defendant's argument that she has failed to establish the fourth prong of a prima facie case as

> simply not true.  Blasingame will not publicly disclose
> any information about her male peer herein, but has filed
> with her reply under seal as Exhibit 5, three pages of
> documents. . . The first of the documents reveals
> BLASINGAME's total compensation for 2008.  (Id.)  The
> second page of the document reveals her male peer's total
> compensation for 2008.  (Id.)  The third page is a ten
> (10) year "dashboard," an internal tool of Lilly, that
> reflects Blasingame and her peer's ten year, totally
> objective sales performance rankings.  (Id.)  These are
> the hard numbers of actual sales by each employee and
> reveal their respective rankings.  (Id.)  These ratings
> show the observer, at the very least, three interesting,
> material  facts  that  leave  unanswered  questions  of
> material fact for the jury.  (Id.)  Blasingame and her
> peer are nearly identical in their status and tenure at

-26-

Lilly.   The mere fact they are ranked together on an internal Lilly chart for the last 10 years confirms such. The respective pages showing the compensation of the two have a line item termed "performance award". (*Id.*)   For BLASINGAME, the amount is $41,200.88.   (*Id.*)   For her male counterpart the amount is $67,382.72. (*Id.*)   What is the significance of this?   These amounts are based on 2007 performance alone that paid in 2008, as reflected on these two documents. (*Id.*)   However, the "dashboard" reveals that Blasingame outperformed her male peer in objective sales numbers in 2007.   (*Id.*)   Her final ranking was number 5, putting her in the top 3%.  (*Id.*) Her male counterpart's final ranking number 32, putting him in the top 21%. (*Id.*)   Yet, the male was paid more than $26,000 more than Blasingame. (*Id.*)   In addition, the reader will note, despite Blasingame's superior objective sales performance in 2007, her male peer received an "E" rating, which is the highest rating and stands for "Exemplary" while Blasingame received the lesser rating of "S" which stands for "Successful". (*Id.*)[28]

In order to establish the fourth prong of her prima facie case, i.e., that others similarly situated were treated more favorably, plaintiff and her alleged comparator must be similarly situated with respect to their job titles, job duties, responsibilities, qualifications, and experience. Berquist v. Washington Mutual Bank, 500 F.3d 344, 353 (5th Cir. 2007), cert. denied, 128 S.Ct. 1124 (2008).   Plaintiff does not dispute that Crawford held a different job title, i.e., Senior District Sales Manager instead of District Sales Manager, that the difference in job title entailed differences in qualifications and experience that made Crawford eligible for higher raises,[29] or that Crawford's

---

[28]*Id.* at 20.

[29]Appendix at 209 (Deposition of Kendall Nichols at p. 61:7-21 (acknowledging that promotion from Sales Manager to Senior Sales
(continued...)

performance was better than hers.[30]   Plaintiff has not presented evidence capable of establishing that Crawford or any other male peer received promotion opportunities that surpassed those she received.   Moreover, defendant has presented undisputed evidence that several male District Sales Managers had performance ratings similar to plaintiff's, yet received less compensation than she.[31] In light of this undisputed evidence and plaintiff's inability to cite any evidence capable of establishing that she and John Crawford were similarly situated for purpose of her discrimination claims, the court concludes that defendant is entitled to summary judgment on plaintiff's claims for unequal compensation and promotional opportunities, or failure to promote because plaintiff has failed to satisfy the fourth prong of a prima facie case for such claims.

**B.    Defendant Is Entitled to Summary Judgment on Plaintiff's Retaliation Claim**

Defendant argues that it is entitled to summary judgment on plaintiff's claim that the "Low Successful" performance evaluation she received in March of 2011 represents retaliation for having

---

[29](...continued)
Manager was a "within-job promotion" so that "the person's job doesn't change but their title changes and they are on a . . . potentially different pay scale")).

[30]Id. at 25 (Plaintiff's Deposition, p. 111:17-20 (acknowledging that Crawford's performance was at times better than her performance)).

[31]Defendant's Motion for Summary Judgment, Docket Entry No. 22, p. 8 (citing Appendix at 9, 455-515.4).

complained of gender discrimination because plaintiff is unable to establish a _prima facie_ case. Alternatively, defendant argues that it is entitled to summary judgment because it had legitimate, non-discriminatory reasons for evaluating plaintiff's 2010 performance as "Low Successful," and that plaintiff has failed to cite evidence from which a reasonable fact-finder could conclude that its non-discriminatory reasons were pretexts for retaliation.

1. Applicable Law

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice . . . or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The TCHRA similarly provides that

> [a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: 1) opposes a discriminatory practice; 2) makes or files a charge; 3) files a complaint; or 4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

Tex. Lab. Code § 21.055. The Texas Supreme Court has recognized that "[t]he TCHRA was enacted to address the specific evil of discrimination and retaliation in the workplace, as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII." _City of Waco v. Lopez_, 259 S.W.3d 147, 153-55 (Tex. 2008). "Although [Texas courts] consider

the TCHRA's plain language and state precedent in interpreting the statute, [they] also look to federal law for interpretive guidance to meet the legislative mandate that the [TCHRA] is intended to 'provide for the execution of the policies of Title VII . . . and its subsequent amendments.'" Crutcher v. Dallas Independent School District, ___ S.W.3d ___, 2013 WL 4517002, *2 (Tex. App. — Dallas, Aug. 26, 2013) (quoting Tex. Lab. Code § 21.001(1)). Absent direct evidence of retaliation, both federal and state courts apply the McDonnell Douglas burden shifting analysis. See McCoy, 492 F.3d at 556-57; Crutcher, ___ S.W.3d at ___, 2013 WL 4517002 at *2-*3.

To establish a prima facie case of retaliation plaintiff must show that (1) she engaged in an activity protected by Title VII; (2) she experienced an adverse employment action following the protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action. McCoy, 492 F.3d at 556-57; Crutcher, ___ S.W.3d at ___, 2013 WL 4517002, at *3. Establishment of a prima facie case gives rise to an inference of retaliation. Montemayor v. City of San Antonio, 276 F.3d 687, 692 (5th Cir. 2001). This inference, in turn, shifts the burden of production to the defendant who must then articulate a legitimate, nonretaliatory reason for the challenged employment action. McCoy, 492 F.3d at 557; Crutcher, ___ S.W.3d at ___, 2013 WL 4517002, at *3. Once a defendant articulates such a reason the inference of retaliation raised by the prima facie showing drops from the case. Montemayor, 276 F.3d at 692. At this juncture the plaintiff bears

-30-

the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose. McCoy, 492 F.3d at 557; Crutcher, ____ S.W.3d at ____, 2013 WL 4517002, at *3.   If the employee fails to prove, or raise a genuine dispute of material fact that the employer's stated reason is a pretext for retaliatory conduct, the defendant is entitled to summary judgment. See McCoy, 492 F.3d at 561-62.  See also Crutcher, ____ S.W.3d at ____, 2013 WL 4517002 (granting defendant's motion for summary judgment upon concluding that plaintiff failed to establish a causal connection between her protected activity and the defendant's adverse employment action).

   2.   Application of the Law to the Facts

   Defendant argues that it is entitled to summary judgment on plaintiff's retaliation claim because plaintiff has failed to present any evidence capable of establishing that there is a causal connection between her protected activity and the "Low Successful" evaluation that she received for her 2010 performance.  Citing her own declaration, plaintiff responds that she

> complained to Lilly Human Resources about her Director,
> Sackrule, in October 2010. . . . Lilly gave Blasingame a
> Low Successful rating shortly thereafter. . . . Lilly's
> proffered reason Blasingame was given a Low Successful
> rating for her 2010 performance, was her "lackluster
> Cymbalta sales." . . . Their proffered reason is simply
> a pretext for retaliation.  All of the area teams had
> lackluster Cymbalta sales in 2010.  (See Defendant's
> dashboard ranking for the area team's Cymbalta sales
> results and rankings attached hereto under seal as
> Exhibit 6 and Blasingame Declaration at p. 2.)
> Blasingame managed the Houston Team listed therein. . . .

-31-

> In 2010, in this area of the country, only one district
> made its Cymbalta goal at 102%. . . . Two districts
> finished at 99% and two districts, including
> Blasingame's, finished at 98%. . . . Five of the
> districts finished at 97%. . . . This means only one
> district met target, Tulsa, OK. . . . Blasingame's team
> finished number four out of ten in 2010 for Cymbalta
> sales in the area. . . . All of the District Sales
> Managers who tied with Blasingame, or finished under her,
> on Cymbalta performance did not receive Low Successful,
> or lower, ratings. . . . The only other person to receive
> a Low Successful rating was Clayton McCoy and he finished
> below Blasingame in Cymbalta sales and overall
> sales. . . . Regarding overall sales goals for 2010, only
> one district in Blasingame's area met that goal by
> finishing at 101%. . . . The next three districts
> finished at 99%, including Blasingame's, and six
> districts finished below that. . . . Therefore,
> Blasingame's district tied for second place out of ten
> districts in 2010 for overall sales.

> This pure data establishes a significant material
> question of fact that precludes summary judgment on
> Blasingame's retaliation claim.[32]

Defendant replies that

> there is no admissible evidence that other managers
> failed to meet their Cymbalta goals. While Plaintiff
> submits records purporting to demonstrate other managers'
> Cymbalta sales, such records are not authenticated, are
> not proper evidence, and in any case are immaterial to
> the overall reasons for Blasingame's 2010 performance
> rating. . . Lilly objects to the Court's consideration of
> this alleged "evidence" of other managers' sales.

> . . .

> Plaintiff fails to address each of Lilly's stated reasons
> for her "Low Successful" rating in 2010, such as her
> attitude toward failure to meet her Cymbalta quota.
> Plaintiff instead focuses on just one aspect of her 2010
> performance and ignores the other considerations relevant
> to her overall job performance.

---

[32]Plaintiff's Response, Docket Entry No. 34-1, pp. 21-22
(citing Declaration of Patti A. Blasingame, Docket Entry No. 30-1,
p. 2). See also Docket Entry No. 31, Exhibit 5.

Specifically, in the Response, Plaintiff mischaracterizes Lilly's reason for her "Low Successful" rating as being due solely to her failure to hit her sales target for Cymbalta. As Grady Grant's uncontroverted declaration makes clear, however, Plaintiff's "Low Successful" rating was a result not only of her failure to meet target on Cymbalta, it was also a result of her failure to meet overall sales targets and her *laissez-faire* attitude towards her failure to make her quota. (APP 217). Thus, she cannot show that any alleged retaliation was a "but for" cause for her "Low Successful" rating, and Lilly is entitled to summary judgment.[33]

### (a) Plaintiff Has Established Causal Connection Element of a Prima Facie Case

A plaintiff alleging retaliation may satisfy the causal connection element of a prima facie case by showing "[c]lose timing between an employee's protected activity and an adverse action against him." McCoy, 492 F.3d at 562. See also Crutcher, ____ S.W.3d at ___, 2013 WL 4517002, at *7 ("temporal proximity between a protected act and an adverse employment action may be evidence of a causal connection 'when they are separated by weeks, as opposed to months or years'") (quoting Perry v. University of Houston, No. 01-08-00807-CV, 2009 WL 3152166, at *5 (Tex. App. — Houston [1st Dist.] Oct. 1, 2009, no pet.). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the

---

[33]Defendant's Supplemental Reply Brief in Support of Defendant's Motion for Summary Judgment, Docket Entry No. 37, pp. 11-12 (citing Declaration of Grady Grant, Appendix at p. 217).

temporal proximity must be 'very close.'"   Clark County School
District v. Breeden, 121 S.Ct. 1508, 1511 (2001).   The Fifth
Circuit has found that "'a time lapse of up to four months' may be
sufficiently close," Feist v. Louisiana, Department of Justice,
Office of the Attorney General, ___ F.3d ___, 2013 WL 5178846, *3
(5th Cir. Sept. 16, 2013) (citing Evans v. Houston, 246 F.3d 344,
354 (5th Cir. 2001)), but that "a five month lapse is not close
enough without other evidence of retaliation." Id. (citing Raggs
v. Mississippi Power & Light Co., 278 F.3d 463, 472 (5th Cir.
2002)).   Other evidence of retaliation may include an employment
record that does not support the adverse action at issue, or an
employer's departure from typical policies and procedures.   Id.
(citing Schroeder v. Greater New Orleans Federal Credit Union, 664
F.3d 1016, 1024 (5th Cir. 2011)).   Here, the temporal proximity
between plaintiff's complaint of discrimination to defendant's
human resource department in October of 2010, and defendant's
issuance of plaintiff's "Low Successful" performance evaluation for
2010 in March of 2011 is somewhere between four and five months.
The court concludes that this temporal proximity is close enough to
establish a prima facie case of retaliation under both Title VII
and the TCHRA.

(b)   Plaintiff Has Not Raised Fact Issue as to Pretext
The court concludes that defendant is entitled to summary
judgment on plaintiff's retaliation claim because plaintiff has

failed to cite admissible evidence capable of raising a fact issue as to whether defendant's stated reasons for her "Low Successful" evaluation were pretexts for retaliation.  Plaintiff argues that the "Low Successful" evaluation she received in March of 2011 was a pretext for retaliation because other District Sales Managers with worse sales records received higher evaluations, and the only other person to receive a "Low Successful" evaluation finished below her in both Cymbalta and overall sales.  In support of this argument plaintiff cites a table or "dashboard" that purports to show comparative sales figures for plaintiff and some of her peers for the years 2001-2010 that is included in Exhibit 5 to the response she filed to defendant's motion for summary judgment. [34] Defendant argues that the "dashboard" and the sales figures reflected on it are inadmissible because they are unauthenticated and, therefore, unreliable.

Federal Rule of Evidence 901(a) provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Documents that are not properly authenticated are not admissible and should not be considered in connection with a motion for summary judgment.  See Orthodontic Centers of Texas, Inc. v. Wetzel, 410 Fed.Appx. 795, 799 n.1 (5th Cir. 2011) (per curiam)

---

[34] See Docket Entry No. 31, Exhibit 5, p. 3.

(citing Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (5th Cir. 1991), for its holding that documents submitted as summary judgment evidence must be authenticated).  The Federal Rules of Evidence do not require conclusive proof of authenticity, but the proponent of a document must present "evidence sufficient to support a finding that the item is what the proponent claims" as a prerequisite to admission.  Cramer v. NEC Corp. of America, 496 Fed.Appx. 461, 464 (5th Cir. 2012) (citing McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 562 (5th Cir. 1998)).  "It is within the court's discretion to exclude evidence that has not been properly authenticated."  Id. (citing R.R. Management Co., L.L.C. v. CFS La. Midstream Co., 428 F.3d 214, 217 (5th Cir. 2005)).

The "dashboard" of sales figures on which plaintiff relies as evidence that defendant's reasons for her "Low Successful" evaluation are pretextual is not authenticated and bears no indicia of reliability.  For example, the "dashboard" is not on a page that includes any mention of the defendant, e.g., logo, letterhead, etc., and the last names of several of the people listed in the first column are missing.  Although plaintiff restates the sales figures reflected on the "dashboard" in her sworn declaration,[35] plaintiff has failed to cite any evidence from which a fact-finder could reasonably conclude either that she has personal knowledge of

---

[35]Declaration of Patti A. Blasingame, Docket Entry No. 30-1, p. 2.

the Cymbalta and/or general sales figures that she attributes to other District Sales Managers, or that a person in her position would have such personal knowledge.   Accordingly, the court concludes that neither the "dashboard" of comparative sales figures included in Exhibit 5 to plaintiff's response to defendant's motion for summary judgment nor plaintiff's restatement of the sales figures reflected on the "dashboard" in her declaration is admissible evidence for purposes of ruling on the defendant's motion for summary judgment.   See Fed. R. Evid. 901(a).

Apart from the evidence of sales figures and annual ratings contained in the "dashboard," plaintiff has failed to cite any evidence showing that she was treated differently than her male peers with regard to the rating she received for her 2010 performance.   Nor has plaintiff presented any evidence capable of refuting defendant's evidence that her 2010 rating was made by Grant, not by Sackrule — the manager she contends harbored discriminatory animus towards women.   Without such evidence plaintiff is unable to raise a genuine issue of material fact for trial on her retaliation claim.

Moreover, even if the court were to consider the sales figures reflected on the "dashboard" as admissible, the court would still conclude that plaintiff has failed to raise a genuine issue of material fact for trial on her retaliation claim.

Plaintiff's contention that the "Low Successful" evaluation that she received for 2010 was retaliatory is based solely on the fact that her 2010 rank, i.e., sales figures, were the same as John

Crawford's, but Crawford received an "Exemplary" rating while she received a "Low Successful" rating.  But for the reasons stated in § III.A.2(b)(2), above, the court has already concluded that plaintiff has failed to cite evidence capable of establishing that she and John Crawford were similarly situated.  Moreover, plaintiff's argument fails to acknowledge that defendant has presented undisputed evidence that the annual rating about which she complains was not based solely on rank, i.e., sales figures, but also on other criteria for which plaintiff fails to offer any evidence capable of establishing that her performance was similar to that of John Crawford's performance.  Nor has plaintiff cited any evidence showing what, if any, disparity in pay between her and John Crawford was caused by their disparate 2010 ratings.  Because plaintiff has failed to offer evidence capable of establishing that defendant's stated reasons for rating her 2010 performance as "Low Successful" were pretexts for retaliation, the court concludes that defendant is entitled to summary judgment on the retaliation claims that plaintiff has asserted under both Title VII and the TCHRA.

## IV.  Conclusions

For the reasons explained above, Defendant's Motion for Summary Judgment (Docket Entry No. 22) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 18th day of October, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-38-